UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ISAAC JONES,

        Plaintiff,                                   Hon. Janet T. Neff

v.                                                   Case No. 1:10-CV-386

JAMES COSGROVE, et al.,

        Defendants.

_____/


**REPORT AND RECOMMENDATION**

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (Dkt. #41). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.


**BACKGROUND**

The following allegations are contained in Plaintiff's verified complaint. (Dkt. #1). On January 28, 2008, Plaintiff went to Resident Unit Manager (RUM) Cosgrove's office to facilitate mailing of a post-conviction motion for relief with a state trial court. On June 13, 2008, Plaintiff witnessed RUM Cosgrove opening this item of mail. When Plaintiff confronted Cosgrove about his failure to mail the item as directed, Cosgrove "hit" Plaintiff in the face and stated, "Nigger you will do as I say, or you won't go home." Plaintiff submitted a grievance regarding the incident. On June 19, 2008, Plaintiff was assaulted by Sergeant LaBelle and Officer Gaskill, who choked Plaintiff until he lost

consciousness. On June 26, 2008, Plaintiff informed Warden Lafler that he "wanted to file a complaint with the State Police on his staff."

On July 2, 2008, RUM Cosgrove "assaulted [Plaintiff] with a knife to [his] face" while Officer McAllister-Walker "sexually assaulted" Plaintiff while he was handcuffed in his bed. Cosgrove then told Plaintiff "he would harm [Plaintiff's] family if [he] didn't sign off on [his] grievance." On July 8, 2008, Plaintiff was "put in the hole for 3 days" and told by Cosgrove that he "would send [Plaintiff] to several prisons to be 'fucked up.'"

On October 6, 2008, RUM Buczek and Assistant Resident Unit Supervisor (ARUS) Zapata "refused to send out [Plaintiff's] appeal brief." Captain Buczek later "came with two officers and took [Plaintiff's] appeal brief, other legal documents, affidavits, and grievances out of [Plaintiff's] cell." Captain Buczek told Plaintiff to "sign off" or he would be transferred to another facility to be "fuck[ed]-up." Plaintiff requested that Hearings Officer VanCourt investigate this alleged incident, but he refused.

On March 25, 2010, Officer Anderson "tried getting inmate Cleveland Smelly. . .to put a weapon in [Plaintiff's] cell." On April 5, 2010, Anderson "was singing a racist song towards" Plaintiff. Anderson also told Plaintiff, "Nigger, I should take you to the hole and kill you my self since RUM Cosgrove didn't do it." On April 11, 2010, Anderson approached Plaintiff and stated, "I should beat your ass right now Nigger." Anderson also told Plaintiff that he "would have some of his co-workers. . .'fuck [him] up' at other prisons." Officer Castle later threatened to take Plaintiff "to the hole" and "beat [his] ass." Castle also told Plaintiff, "Nigger you know your place and do as I say."

On April 23, 2010, Plaintiff initiated the present action against seventeen (17) Michigan Department of Corrections employees. Plaintiff alleged that Defendants subjected him to: (1) unlawful

retaliation; (2) assault; (3) violation of his right to access the courts; (4) intimidation; and (5) racial harassment. On May 20, 2010, the Honorable Janet T. Neff dismissed Plaintiff's claims against nine (9) defendants, permitting Plaintiff's claims to proceed against the following individuals: (1) RUM Cosgrove; (2) ARUS Zapata; (3) RUM Buczek; (4) Officer Anderson; (5) Officer Castle; (6) Officer McAllister-Walker; (7) Officer Gaskill; and (8) Captain Buzek. These defendants now move for summary judgment.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See Bower v. Federal Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

As the Supreme Court recently stated, a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for

summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party

"must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.        **Verification of Plaintiff's Complaint**

As is well recognized, only admissible evidence may be considered in ruling on a motion for summary judgment. *See Rogers v. Lilly*, 292 Fed. Appx. 423, 428 n.3 (6th Cir., Aug. 22, 2008). Affidavits may be submitted in support of or opposition to a motion for summary judgment. *See* Fed. R. Civ. P. 56(c). To be admissible, however, in a summary judgment proceeding an affidavit must either: (a) be "sworn to before an officer authorized to administer an oath, such as a notary public, or (b) be "an unsworn declaration which is dated and signed by the declarant" and "subjects the declarant to penalties of perjury." *Trapaga v. Central States Joint Board Local 10*, 2007 WL 1017855 at *2 (N.D. Ill., Mar. 30, 2007); *see also*, *McConnell v. Ritz-Carlton Watertower*, 39 Fed. Appx. 417, 420 (7th Cir., June 5, 2002); *Howell v. New Mexico Department of Aging & Long Term Services*, 2010 WL 3965927 at *4 (10th Cir., Oct. 12, 2010).

Moreover, a verified complaint "carries the same weight as would an affidavit for the purposes of summary judgment." *American Civil Liberties Union of Kentucky v. Grayson County*, 591 F.3d 837, 844 n.2 (6th Cir. 2010). Plaintiff's complaint contains what purports to be a properly executed verification statement. While Defendants have not challenged the sufficiency of Plaintiff's purported verification statement, the Court is obliged to do so.

The unsworn verification statement in question reads as follows: "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding, ex[cept] that stated upon information and belief in what he believes to be true." This verification statement is immediately followed by a statement from a notary public that Plaintiff's complaint was "subscribed and sworn to me" on April 20, 2010.

For an unsworn statement to be admissible in a summary judgment proceeding, it must be executed "in substantially the following form. . .I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746. Plaintiff's purported verification statement begins with this language, but is followed immediately by the clause, "to the best of my knowledge and understanding." Inclusion of this latter clause calls into question the sufficiency of the purported verification. The few courts which have addressed this subject have reached different conclusions.

For example, in *Tungjunyatham v. Johanns*, 2009 WL 3823929 (E.D. Cal., Nov. 13, 2009), the court found this additional language a "qualification" contrary to the requirements of § 1746. *Id.* at *6 n.3; *see also*, *Denmon v. Runyon*, 1993 WL 441970 at *2 (D. Kan., Oct. 25, 1993) (same). Other courts have, however, concluded otherwise. For example, in *Smith v. Psychiatric Solutions, Inc.*, 2009 WL 903624 (N.D. Fla., Mar. 31, 2009), the court determined that inclusion of the language in question did not render the declaration invalid. *Id.* at *5. As the court observed, § 1746 "does not 'mandate strict compliance with the exemplary clause provided in the statute,'" but instead only requires that the declaration "substantially" comply with the relevant statutory language. In this respect, the court concluded that "[s]o long as the declaration contains the phrase 'under penalty of perjury' and states that the document is true, the verification requirement is met." *Id.*; *see also*, *Caidor v. Potter*, 2007 WL 2847229 at *6 (N.D.N.Y., Sept. 26, 2007) (substantial compliance with § 1746 is sufficient); *Clark v. Schaller*, 2007 WL 666768 at *1 n.3 (E.D. Wis., Feb. 28, 2007) (same).

The Court finds the latter authority more persuasive especially considering that, as discussed below, the factual allegations in Plaintiff's complaint relevant to resolution of Defendants' motion for summary judgment concern matters which Plaintiff alleges to have personally witnessed.

Allegations by Plaintiff concerning matters which he alleges to have personally witnessed do not seem susceptible to the sort of equivocation that might render invalid a purported verification. Furthermore, even if Plaintiff's unsworn verification is deemed insufficient, the Court finds that the subsequent statement by a notary public that Plaintiff's complaint was "subscribed and sworn" is unaffected by the sufficiency of Plaintiff's unsworn declaration and constitutes, by itself, a sufficient verification. The Court concludes, therefore, that Plaintiff's complaint is properly verified and shall be considered as evidence in response to the present motion for summary judgment.

**II.      Eleventh Amendment Immunity**

Defendants assert that they are entitled under the Eleventh Amendment to immunity from Plaintiff's official capacity claims. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) ("[u]nder the *Ex Parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

In his complaint, Plaintiff states that he is suing Defendants in both their personal and official capacities seeking only monetary damages. Accordingly, the undersigned recommends that Plaintiff's official capacity claims (seeking only monetary relief) against Defendants Cosgrove, Zapata, Buczek, Anderson, Castle, McAllister-Walker, Gaskill, and Buzek be dismissed on Eleventh Amendment grounds.

**III.     Exhaustion**

Defendants assert that many of Plaintiff's claims must be dismissed because Plaintiff has failed to properly exhaust his administrative remedies. The Court agrees.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an

agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).

In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, e.g., the regional health administrator for grievances concerning health care issues. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

Defendants have submitted an affidavit executed by Richard Stapleton, Administrator for the Office of Legal Affairs. (Dkt. #42, Exhibit C). Stapleton asserts that he is "the second-line supervisor of the Grievance Section with overall responsibility for Step III grievance decisions." When a Step III grievance is received in the Grievance Section it is entered into the "grievance tracking database" and then "assigned to a grievance investigator." According to Stapleton, "[a]ll Step III grievance appeals are recorded on the Grievance Tracking database." Once a decision is reached on a Step III grievance appeal, "[a] copy [of the decision] is retained in the Office of Legal Affairs." Stapleton asserts that a search of the relevant database revealed that Plaintiff has pursued only one grievance through all three steps of the grievance process: Grievance DRF-2008-06-612-26a. *Id.*

Plaintiff initiated this grievance on or about June 26, 2008, alleging the following. (Dkt. #42, Exhibit C, Attachment). On June 13, 2008, Defendant Cosgrove opened Plaintiff's legal mail containing a post-conviction motion for relief he wished to file in state court. When confronted by Plaintiff, Cosgrove stated, "Nigger you don't leave here until I say so." Cosgrove then flushed Plaintiff's motion down the toilet, after which he "hit" Plaintiff in the face. Cosgrove also tried to persuade Plaintiff's cellmate to place a knife in Plaintiff's "area of control" and then accuse Plaintiff of plotting to stab him. Plaintiff pursued this grievance through all three steps of the grievance process. *Id.* Plaintiff has failed to submit evidence that he pursued through step III of the grievance process any other grievance regarding the allegations in his complaint.

The undersigned, therefore, recommends that Plaintiff's remaining claims be dismissed without prejudice for failure to exhaust administrative remedies, except for those claims in Plaintiff's complaint against Defendant Cosgrove that are articulated in the aforementioned grievance. Specifically, Plaintiff's claim that on June 13, 2008, Defendant Cosgrove: (1) interfered with Plaintiff's attempt to file a post-conviction motion for relief in the state court; (2) hit Plaintiff in the face; and (3) used racial epithets when speaking to Plaintiff.

### IV. Denial of Access to the Courts

Plaintiff asserts that Defendant Cosgrove interfered with his attempt to file in the state court a post-conviction motion for relief. Plaintiff asserts that such conduct violated his First Amendment right to access the courts.

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims."

*Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). To prevail, Plaintiff must allege and establish that he suffered "actual injury" (i.e., prejudice) to a non-frivolous legal claim in one of these three categories. *See Brown v. Matauszak*, 2011 WL 285251 at *4 (6th Cir., Jan. 31, 2011) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) and *Casey*, 518 U.S. at 351).

Plaintiff's claim fails for two reasons. First, because Plaintiff has failed to allege in his complaint that he suffered any injury or prejudice to a non-frivolous legal claim his allegations fail to state a claim on which relief may be granted.[1] *See Harbury*, 536 U.S. at 414-15; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949-50 (2009). Second, even if Plaintiff had articulated allegations sufficient to state a claim he has failed to present any evidence that would entitle him to prevail on such a claim. Defendant Cosgrove is, therefore, entitled, in the alternative, to summary judgment. *See Minadeo*, 398 F.3d at 761 ("a party moving for summary judgment may satisfy its burden to show that there are no genuine issues of material fact simply 'by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case").

**V.      Racial Intimidation**

As noted above, Plaintiff alleges in his complaint that on June 13, 2008, Defendant Cosgrove spoke to him using racially offensive language. It is well established, however, that allegations that a prison official employed "racial slurs and other derogatory language. . .although

---

[1] While Defendant has moved for summary judgment, because Plaintiff is proceeding in forma pauperis the Court possesses the authority to dismiss at any time any claim that fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court determines that. . .the action or appeal. . .fails to state a claim on which relief may be granted").

unprofessional and reprehensible, do[] not rise to the level of constitutional magnitude." *Jones-Bey v. Johnson*, 248 Fed. Appx. 675, 677-78 (6th Cir., Sept. 21, 2007) (citations omitted). Accordingly, the undersigned recommends that this claim be dismissed for failure to state a claim on which relief may be granted.

**VI.       Excessive Force**

Plaintiff alleges in his complaint that on June 13, 2008, Defendant Cosgrove "hit [him] in the face" and stated, "Nigger you will do as I say, or you won't go home." Plaintiff asserts that Cosgrove's actions violated his Eighth Amendment right to be free from cruel and unusual punishment.

At the outset, the Court notes that Plaintiff has properly exhausted only part of this particular allegation. As discussed above, while Plaintiff asserted in his grievance that Defendant Cosgrove hit him in the face, he did not allege in his grievance that Cosgrove used a racial slur when striking him. Thus, Plaintiff has only properly exhausted his allegation that Defendant Cosgrove "hit [him] in the face."

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. The excessive use of force which results in the unnecessary and wanton infliction of pain violates this provision. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). While maintenance of prison discipline "may require that inmates endure relatively greater physical contact," the Eighth Amendment is nevertheless violated where the "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, - - - F.3d - - -, 2011 WL 284494 at *2 (6th Cir., Jan. 31, 2011).

Claims alleging the excessive use of force have both a subjective and an objective component. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). The objective component of the analysis examines whether the pain or deprivation allegedly suffered by the prisoner was "sufficiently serious" to implicate the Eighth Amendment. *Id.*; *see also*, *Curtin*, 2011 WL 284494 at *2. To be "sufficiently serious," the prison official's act or omission must deny the prisoner of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), as defined by contemporary standards of decency. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). It is equally clear, however, that "not. . .every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Accordingly, the Eighth Amendment is not implicated by mere *de minimis* uses of force. *See Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) ("an excessive-force claimant must show something more than *de minimis* force").

The subjective component of the analysis examines whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith." *Wilson*, 501 U.S. at 299. In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. 320-21; *see also*, *Curtin*, 2011 WL 284494 at *2. When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to temper the severity of the response. *Hudson*, 503 U.S. at 7; *see also*, *Curtin*, 2011 WL 284494 at *2. The absence of injury, while relevant, is not dispositive. *Hudson*, 503 U.S. at 7.

As previously noted, Plaintiff alleges that Cosgrove "hit [him] in the face." Plaintiff makes no allegations concerning the nature of the blow Cosgrove allegedly delivered. Plaintiff does not allege that he suffered any pain as a result of the strike or that such required medical attention of any kind. Moreover, in response to the present motion, Plaintiff has submitted no evidence regarding such.

Defendant Cosgrove has submitted an affidavit in which he asserts that he neither struck Plaintiff nor used a racial slur. (Dkt. #42, Exhibit F). Defendant has also submitted an affidavit executed by Robert Vashaw, a Lieutenant in the Michigan Department of Corrections. (Dkt. #42, Exhibit H). Vashaw asserts that he investigated Plaintiff's grievance concerning the June 13, 2008 encounter between Plaintiff and Cosgrove. According to Vashaw, when Plaintiff was questioned about the matter he failed to mention that he had been struck in the face. Vashaw also asserts that a search of Plaintiff's healthcare records reveals that Plaintiff never sought medical attention to treat or examine a blow to the face. *Id.* Defendant Cosgrove asserts that he is entitled to relief because, even if Plaintiff's allegation is believed, the evidence reveals that the encounter was not sufficiently serious to implicate the Eighth Amendment.

In *Leary v. Livingston County*, 528 F.3d 438 (6th Cir. 2008), Leary alleged (among other things) that a prison guard (McGuckin) struck him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The district court denied McGuckin's request for qualified immunity. McGuckin appealed the matter to the Sixth Circuit which ruled that McGuckin was entitled to qualified immunity because Plaintiff's allegations failed to state a claim on which relief may be granted. *Id.* 441-45.

Specifically, the court concluded that "Leary's single allegation of force - that McGuckin hit him '[i]n the back of the neck' with the side of his hand, performing 'a karate chop kind of deal' -

was *de minimis*." *Id.* at 443. In reaching this conclusion, the court observed that Leary "did not suffer any objectively verifiable injury from the blow," as "[t]here was no hospital visit after the encounter, no doctor's visit, no bruise, nothing in short to indicate that the encounter rose above a 'negligible [use of] force' or caused anything more than a 'trifling injury.'" The court also noted that when asked about the incident in question, Leary downplayed its significance. *Id.* The court further observed that:

> As a matter of state tort law, it may be that "the least touching of another in anger is a battery," but that does not make it "a violation of a constitutional right actionable under 42 U.S.C. § 1983." The point of the *de minimis* rule is to make it clear that the Constitution does not become a "font of tort law" that the federal courts "superimpose[ ] upon whatever systems" the States already have. Otherwise, every minor touching would become actionable, blurring the lines between the state courts' enforcement of their tort laws and the federal courts' enforcement of the Constitution. Whatever else non-actionable *de minimis* force may be, it must include a touching that neither "hurt" nor threatened the individual.

*Id.* at 445 (internal citations omitted).

As previously noted, Defendant Cosgrove has submitted an affidavit in which he denies striking Plaintiff. Defendant Cosgrove has also submitted evidence that when Plaintiff was questioned about the encounter he failed to even mention that he had been struck in the face and, furthermore, that Plaintiff never sought medical attention to treat or examine a blow to the face. Thus, even if the Court accepts as true Plaintiff's allegation that Defendant Cosgrove struck him, Plaintiff has submitted no evidence which would permit a reasonable person to conclude that Cosgrove's actions constituted more than a "negligible use of force" or "caused anything more than a trifling injury." Accordingly, the undersigned recommends that Defendant Cosgrove is entitled to summary judgment as to this claim.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (dkt. #41), be **granted** and Plaintiff's action terminated.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 7, 2011

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge